UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

JOHN DOE,

*Plaintiff,*

v.

ROSALIND FRANKLIN UNIVERSITY,
ROSALIND FRANKLIN UNIVERSITY
BOARD OF TRUSTEES, ALLENA
BARBATO, in her individual and official
capacity, DR. NANCY PARSLEY,
in her individual and official capacity,
and DR. HEATHER KIND-KEPPEL in
her individual and official capacity,

*Defendants.*

Case Number 23-cv-2054

Judge Elaine E. Bucklo

Magistrate Judge Beth W. Jantz

## PLAINTIFF'S MOTION TO PROCEED UNDER A PSEUDONYM

Plaintiff John Doe (hereinafter referred to as "Plaintiff" or "John Doe" or "Doe"), by his attorneys Nesenoff & Miltenberg, LLP and Elvis Gonzalez, Ltd., hereby seeks authorization to file a Complaint in the above-captioned matter as a pseudonymous Plaintiff. In light of the serious nature of the allegations contained in the Complaint, Plaintiff is justifiably concerned about the potential irreparable harm that could further prevent him from proceeding with his future endeavors. Plaintiff's identity as described in the Complaint should not be disclosed to the public due to the nature of the allegations in said Complaint against Defendants Rosalind Franklin University, Rosalind Franklin University Board of Trustees, Allena Barbato, Dr. Nancy Parsley, and Dr. Heather Kind-Keppel (collectively, "Defendants"). *See* Declaration of Andrew T. Miltenberg, Esq. ("Miltenberg Decl."), attached to Plaintiff's Motion to Proceed Under a Pseudonym as Exhibit A.

1

Plaintiff is prepared to provide a statement of his true identity under seal, upon the Court's request.  Further, Plaintiff has conferred with Defendants' counsel regarding the relief sought herein. Counsel for Defendants notes that because they identified the Court as having already denied the motion, they take no further position on this request.

## STATEMENT OF FACTS

The complete facts underlying this litigation are set forth fully in Plaintiff's Complaint, filed previously (CM/ECF No. 1) and incorporated herein by reference. For the Court's convenience, a summary of the relevant facts follows.

Plaintiff, a male student at Rosalind Franklin University ("RFU" or the "University"), slated to graduate in the spring of 2023, was falsely accused by Jane Roe[1], a female RFU student, of violating RFU'S Title IX Policy (the "Policy").

Jane Roe claimed that Plaintiff sexually assaulted her while Plaintiff was intoxicated on November 20, 2021, after the two went out drinking with mutual friends, first at Roe's house then at a bar.  Compl. ¶4, 56, 59. Plaintiff blacked out after ingesting a marijuana edible and several drinks.  Compl. ¶64, 67. Roe told her friends she wanted to stay at the bar with Plaintiff. Compl. ¶68. Roe later left the bar with Plaintiff in an Uber and brought the Plaintiff to her apartment. Compl. ¶68. Roe and Plaintiff had consensual sex including engaging in mutual oral sex ("69" position) with Roe on top. Compl. ¶73. During the sexual activity Plaintiff left to use the bathroom. Compl. ¶74. Roe did not lock her bedroom door while Plaintiff was in the bathroom, nor did she advise either of her roommates that she needed help, demonstrating Roe's clear consent to the sexual interaction. Compl. ¶74. Roe's roommates had not heard anything and were unaware that

---

[1] Jane Roe is a pseudonym.

Plaintiff had spent the night. Roe texted Plaintiff the next morning to make sure he got home safely. Compl. ¶75.

About one-week later, Roe told Plaintiff that he had sexually assaulted her. Compl. ¶79. Plaintiff was shocked by Roe's allegations as he had no memory of the alleged incident due to his state of intoxication. Compl. ¶80. The allegations ultimately caused Plaintiff to experience a mental breakdown and to finish the remainder of the semester online. Compl. ¶81.

Approximately four months later, Roe filed a Title IX Complaint against Plaintiff. Compl. ¶82. From the inception, RFU engaged in a Title IX investigation and adjudication in which it kept Plaintiff in the dark, failing to even notify him of the precise allegations against him. Compl. ¶83. As an example, the Investigator wrote, under the report's Detail and Consistency heading: "Jane Roe filed a Title IX complaint because she was sexually assaulted by Plaintiff," instead of "because she was **allegedly** sexually assaulted." Compl. ¶125. The Investigative Report also originally contained the names of parties other than Plaintiff and Roe and incorrectly listed the date of the Complaint, indicating it had been copied and pasted from another Title IX investigation and demonstrating the carelessness of RFU and the Investigator. Compl. ¶90.

On May 16, 2022, prior to the Title IX hearing, Plaintiff initiated the process to withdraw from RFU. He obtained approval for the withdrawal from his program director and was advised on May 19 by the Registrar's office that his change in student status was approved. Compl. ¶91-93. However, on May 31, 2022 the Title IX Officer emailed Plaintiff stating that his withdrawal had not been approved and that because he was still enrolled at RFU, the Title IX hearing would proceed. Compl. ¶98. On information and belief, RFU's Title IX Office prevented Plaintiff from withdrawing from RFU in order to be able to conduct the hearing and find Plaintiff, the male accused of misconduct, responsible. Compl. ¶99.

The Title IX Hearing was held on June 14, 2022, and was fraught with procedural inadequacies and a clear bias against Plaintiff. The hearing panel inappropriately curtailed Plaintiff's advisor's cross-examinations and interrupted the cross-examination of Roe to hear Roe's witnesses' testimony. Compl. ¶148. The hearing panel improperly made statements in support of Roe and her testimony during the hearing. Compl. ¶138. The hearing panel prevented Plaintiff from observing the testimony of Roe's witnesses. Compl. ¶¶150-151. The Investigator and the hearing panel ignored the flaws and inconsistencies in Roe's statements/testimony, including that she engaged in the "69 position" with Plaintiff, a position which requires mutual participation and Plaintiff did not force her into that position; and that Roe admittedly suffered no physical injuries of any kind as a result of the alleged assault. Compl. ¶73, 75.

The Hearing Panel's determination found Plaintiff responsible. Compl. ¶153. The determination faulted Plaintiff for stating that he did not recall obtaining consent to engage in sexual relations with Roe, however the determination omitted that Plaintiff could not recall obtaining consent because he was severely intoxicated to such a degree that he could not recall anything that occurred after he left the bar in the early hours of November 21, 2021. Compl. ¶155. Importantly, under RFU's definition of consent, Plaintiff would not have been able to consent to sexual activity with Roe due to his incapacitation from drugs and alcohol. Yet, this was not considered by the hearing panel in reaching their conclusion that Plaintiff was the individual who failed to obtain consent from Roe. Compl. ¶156.

On July 8, 2022, Dr. Parsley issued an appeal decision summarily dismissing and denying every point Plaintiff made in his appeal including RFU's lack of jurisdiction, the Title IX's office obstruction of Plaintiff's withdrawal, the hearing panel's bias, and the interference/prevention of Plaintiff's cross-examination of witnesses. Compl. ¶167-176.

## ARGUMENT

### I.    The Legal Standard for Permitting a Party to Proceed Under a Pseudonym

Many federal courts have permitted parties to proceed anonymously when special circumstances arise. Generally, in determining whether to permit a party to proceed anonymously, a court "must balance the need for anonymity against the general presumption that parties' identities are public information and the risk of unfairness to the opposing party." *Plaintiffs I Thru XXIII v. Advanced Textile Corp.,* 214 F. 3d 1058, 1068 (9th Cir. 2000).

The Seventh Circuit has stated that: "[T]he judge ruling on a motion to use a pseudonym has an independent duty to determine whether exceptional circumstances justify a departure from the normal method of proceeding in federal courts." *Doe v. Blue Cross & Blue Shield United of Wisconsin*, 112 F.3d 869, 872 (7th Cir. 1997). However, the Court has also recognized that a party may be permitted to proceed anonymously:

> [T]he federal courts of appeal and a number of district courts have recognized that a district court may have the discretion to permit a party to proceed under a fictitious name. This unusual practice has been permitted in exceptional cases where the party has a privacy right so substantial as to outweigh the "customary and constitutionally-embedded presumption of openness in judicial proceedings." *[Doe v.] Frank*, 951 F.2d [320] at 323 [11th Cir. 1992], quoting *Doe v. Stegall,* 653 F.2d 180, 186 (5th Cir.1981). See, e.g., *James v. Jacobson,* 6 F.3d 233, 238–39 (4th Cir.1993); *Coe v. United States Dist. Ct. for the Dist. of Colo.,* 676 F.2d 411, 418 (10th Cir.1982); *Southern Methodist Univ. Ass'n of Women Law Students v. Wynne & Jaffe,* 599 F.2d 707, 713 (5th Cir.1979); *Doe v. Shakur*, 164 F.R.D. 359, 360 (S.D.N.Y.1996); *Doe v. Bell Atlantic Business Sys. Servs., Inc.,* 162 F.R.D. 418, 420 (D.Mass.1995). The Supreme Court appears not to have ruled specifically on the practice or its compatibility with Fed.R.Civ.P. 10, but it has implicitly permitted the use of fictitious names in a number of cases. E.g., *Roe v. Wade,* 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973); *Doe v. Bolton,* 410 U.S. 179, 93 S.Ct. 739, 35 L.Ed.2d 201 (1973).

*Doe v. Indiana Black Expo, Inc.,* 923 F. Supp. 137, 139 (S.D. Ind. 1996). Additionally, the Seventh Circuit articulated that while there is a presumption that "parties' identities are public

information," that presumption "can be rebutted by showing that the harm to the plaintiff ... exceeds the harm from concealment." *Doe v. City of Chicago*, 360 F.3d 667, 669 (7th Cir. 2004).

While the Seventh Circuit has not formulated a test to determine whether pseudonym status should be granted, the Court has articulated several factors to consider whether a "[p]laintiff's interest in privacy is so significant as to outweigh the strong presumption favoring public identification of litigants." *Doe v. Indiana Black Expo, Inc.*, 923 F. Supp. At 140. These factors include, but are not limited to:

> "(1) whether the plaintiff is challenging governmental activity; (2) whether the plaintiff would be required to disclose information of the utmost intimacy; (3) whether the plaintiff would be compelled to admit his or her intention to engage in illegal conduct, thereby risking criminal prosecution; (4) whether the plaintiff would risk suffering injury if identified; and (5) whether the party defending against a suit brought under a pseudonym would be prejudiced."

*Id.* (*quoting Doe v. Shakur*, 164 F.R.D. 359, 361 (S.D.N.Y. 1996)); *see also Doe v. City of Indianapolis*, No. 1:12-CV-62, 2012 WL 639537, at *1 (S.D. Ind. Feb. 27, 2012) (citing *Doe v. Indiana Black Expo, Inc.*, 923 F. Supp. at 140). Importantly, this factor-based balancing test does not require that each factor, or even a majority of the factors, be satisfied. Rather, all that is required is a showing that "some combination of these factors outweighs the ordinary presumption of judicial openness, justifying the exercise of the Court's discretion." *Sealed Plaintiff v. Sealed Defendant #1,* 537 F.3d 185 (2d Cir. 2008). Similarly in *Doe v. Indiana Black Expo, Inc.,* 923 F. Supp. at 140, the Court instructed that:

> "a judge presented with a request to proceed under a fictitious name should carefully review *all* the circumstances of the given case and then decide 'whether the customary practice of disclosing the plaintiff's identity should yield to the plaintiff's privacy concerns.' Against the backdrop of the presumption in favor of public disclosure, therefore, the court will review and then evaluate the nature of plaintiff's claims, his asserted need for privacy, and the defendants' interests in public disclosure of the plaintiff's name."

quoting *Doe v. Frank*, 951 F.2d 320, 323 (11th Cir. 1992) (emphasis added); *see also Doe v. Purdue Univ.,* 321 F.R.D. 339, 341 (N.D. Ind. 2017).

Courts also consider whether the injury litigated against would be suffered as a result of disclosing the plaintiff's identity and whether plaintiff's identity has been kept confidential thus far. *Doe v. Purdue Univ.,* 321 F.R.D. 339, 341 (N.D. Ind. 2017).

As outlined below, applying this framework to the instant matter, Plaintiff John Doe here should be permitted to proceed under a pseudonym.

## II. Plaintiff's Claims Involve Challenging the Actions of a Partially Federally-Funded Medical School

With respect to this factor, courts recognize that "where a plaintiff attacks governmental activity, for example a governmental policy or statute, the plaintiff's interest in proceeding anonymously is considered particularly strong [, because in] such circumstances the plaintiff presumably represents a minority interest (and may be subject to stigmatization), and there is arguably a public interest in a vindication of his rights." *EW v. New York Blood Ctr.*, 213 F.R.D. 108, 111 (E.D.N.Y. 2003). *See Santiago v. E.W. Bliss Co.*, 2012 IL 111792, 973 N.E.2d 858 (holding that filing a complaint under a fictious name without prior leave of court did not render it per se null and void or deprive court of jurisdiction over same, citing *EW v. New York Blood Ctr., supra*).

Plaintiff is suing RFU, a partially federally-funded medical school. RFU received $107,314,307.00 in federal funding for the 2021/2022 school year[2]. Although RFU is not necessarily a government entity, it is also not an entirely private corporation. In the instant case, there is a strong public interest in vindicating the rights of male students at RFU, given the University's non-compliance with federal law and their own policies.

---

[2] https://projects.propublica.org/nonprofits/display_audit/4851720221

As the District Court for the Eastern District of New York has explained, a private school and its employees "are neither governmental entities nor ordinary private parties. However, . . . the [school] 'is organized solely to perform an important, public service' and the [employee] is employed to assist in achieving the [school]'s goals. Given the significant roles held by these defendants in their community, plaintiff's allegations . . . raise concerns affecting a larger association rather than the interest of an individual plaintiff." *Doe No. 2 v. Kolko*, 242 F.R.D. 193, 195 (E.D.N.Y. 2006) (quoting *EW,* 213 F.R.D. at 111–12); *see also Doe v. Del Rio*, 241 F.R.D. 154, 158 (S.D.N.Y. 2006) (when a lawsuit "affects many similarly situated individuals, the identities of the particular parties bringing the suit may be largely irrelevant to the public concern with the nature of the process.") *See also Doe v. Univ. of Chicago,* No. 16 C 08298, 2017 WL 4163960, at *1 (N.D. Ill. Sept. 20, 2017) (Plaintiff permitted to proceed anonymously in case against private university.); *Doe v. Loyola Univ.-Chicago,* No. 20 CV 7293, 2021 WL 2550063, at *1 (N.D. Ill. June 22, 2021), *appeal dismissed sub nom. Doe v. Loyola Univ. of Chicago*, No. 21-2360, 2021 WL 6689520 (7th Cir. Aug. 9, 2021) (same).

Thus, this factor weighs in favor of non-disclosure.

### III.    The Litigation Involves Highly Sensitive Information

The second factor highlighted in *Doe v. Indiana Black Expo, Inc.* weighs in favor of allowing Plaintiff to proceed pseudonymously as the details discussed are of a highly sensitive and personal nature. *Doe v. Indiana Black Expo, Inc*., 923 F. Supp. at 140. As is evident from the Complaint, the claims which form the subject of this matter involve intimate, graphic, sexual acts between young adults. Plaintiff respectfully suggests that the need for privacy of the involved students significantly outweighs the general public's need to know their identities.

Further, Plaintiff does not contend that the revelation of his name would result in mere embarrassment. Rather, Plaintiff notes the highly sensitive issues involved with claims of sexual assault. Moreover, recognizing the delicate nature of cases such as the one at bar, courts across the country have routinely permitted similarly situated plaintiffs—students falsely accused of sexual misconduct and/or intimate partner violence—to proceed by pseudonym, acknowledging the great danger such plaintiffs face in proceeding under their own names, and the futility of the lawsuit if the allegations will be forever publicly associated with plaintiffs' names.

As the District Court for the Northern District of New York has explained, "protecting the anonymity of sexual assault victims <u>and those accused of committing sexual assault</u> can be an important safeguard to ensure that the due process rights of all parties are protected." *Doe v. Colgate Univ.,* No. 15-CV-1069 (LEK) (DEP), 2016 WL 1448829, at \*2 (N.D.N.Y. Apr. 12, 2016) (emphasis added). "[B]eing charged with and found responsible for sexual misconduct by a prestigious educational institution unquestionably bears a strong social stigma." *Doe v. Purdue Univ.,* No. 4:19-CV-56-TLS-JPK, 2019 WL 3887165, at \*3 (N.D. Ind. Aug. 19, 2019) quoting *Doe v. Univ. of Notre Dame*, No. 3:17-cv-298 ¶ 28 (N.D. Ind. May 8, 2017). *See also Doe v. Baum*, 903 F.3d 575 (6th Cir. 2018) (student found responsible for sexual misconduct); *Doe v. Columbia Univ.*, 831 F.3d 46 (2d Cir. 2016) (student found responsible for sexual misconduct); *Doe v. Univ. of Scis.*, No. 19-cv-00358, 2019 WL 632022, at \*1 (E.D. Pa. Feb. 14, 2019) (plaintiff permitted to proceed as John Doe without formal motion practice); *Doe v. Trustees of Boston Coll.*, 892 F.3d 67 (1st Cir. 2018); *Doe v. Pennsylvania State Univ.*, 336 F. Supp. 3d 441, 442 (M.D. Pa. 2018); *Doe v. George Washington Univ.*, 321 F. Supp. 3d 118 (D.D.C. 2018) (plaintiff student found responsible for sexual assault in university Title IX proceeding); *Doe v. Univ. of S.C.,* No. 18-CV-161 (TLW) (PJG), 2018 WL 1215045, at \*1 (D.S.C. Feb. 12, 2018) ("Doe has demonstrated

compelling interests in anonymity in this matter because of the personal and sensitive nature of the underlying facts of this case, which involve allegations of sexual assault."), *report and recommendation adopted*, 2018 WL 1182508 (D.S.C. Mar. 6, 2018); *Doe v. The Trustees of the Univ. of Pennsylvania*, 270 F. Supp. 3d 799, 805 (E.D. Pa. 2017) (plaintiff student found responsible for sexual assault in university Title IX proceeding); *Doe v. Amherst Coll.*, 238 F. Supp. 3d 195, 202 n.1 (D. Mass. 2017) (noting court had previously granted plaintiff's pseudonym motion, where plaintiff student was found responsible for sexual misconduct in school Title IX proceeding); *Doe v. Brown Univ.*, 166 F. Supp. 3d 177 (D.R.I. 2016) (plaintiff student found responsible for sexual assault permitted to proceed as John Doe); *Doe v. Univ. of St. Thomas*, No. 16-CV-1127(ADM) (KMM), 2016 WL 9307609, at *2 (D. Minn. May 25, 2016) ("In cases involving intensely personal matters, the normal practice of disclosing the parties' identities yields to a policy of protecting privacy. . . . The complaint and its supporting documents describe very private sexual acts, whether consensual or not, between two young college students, and it is difficult to imagine any resolution of this case without further exploration of truly intimate matters." (citations omitted)); *Doe v. Brandeis Univ.,* 177 F. Supp. 3d 561 (D. Mass. 2016) (student found responsible for sexual assault); *Doe v. Alger*, 317 F.R.D. 37, 40 (W.D. Va. 2016) (granting motion to proceed as pseudonym by student found responsible for sexual misconduct); *Doe v. Middlebury*. No. 15-CV-192 (JGM), 2015 WL 5488109 (D.Vt. Sept. 16, 2015) (student found responsible for sexual misconduct); *Doe v. Univ. of S. Florida Bd. of Trustees*, 15-CV-682-T-30 (EAJ), 2015 WL 3453753 (M.D. Fla. 2015) (student accused of battery, threats, and violence against girlfriend); *Doe v. Salisbury Univ.*, 107 F. Supp. 3d 481 (D. Md. 2015) (student accused of sexual assault); *Doe v. Washington & Lee Univ.,* No. 14-CV-00052, 2015 WL 4647996 (W.D. Va. Aug. 5, 2015) (student expelled after finding of nonconsensual intercourse); *Doe v. Univ. of*

*Montana*, 2012 WL 2416481 (D. Mont. 2012) ("With respect to the individual students involved in the Student Conduct Code proceeding, as well as the witnesses . . . involved in that proceeding, the Court finds that the interests of those individuals in avoiding undue embarrassment, harassment, and disclosure of sensitive private information outweigh the public's need to know their names." (*citing Plaintiffs I–XXIII v. Advanced Textile Corp.,* 214 F.3d 1058, 1068–69 (9th Cir.2000))); *Doe v. Univ. of the South*, 687 F. Supp. 2d 744 (E.D. Tenn. 2009) (student found responsible for sexual misconduct); *Doe v. Penzato*, 10-CV-5154 (MEJ), 2011 WL 1833007, at *3 (N.D. Cal. May 13, 2011) (granting motion by plaintiff alleging sexual assault to proceed as pseudonym; *Doe v. Grinnell Coll.*, No. 17-CV-00079 (RGE) (SBJ) (S.D. Iowa July 10, 2017) , ECF No. 39 (finding "the determinative factor here is that disclosure of plaintiff's identity would cause the injury litigated against to be incurred as a result of the disclosure"); *Doe v. Allegheny College*, No. 17-cv-00031 (W.D.Pa. May 1, 2017), ECF No. 18 (granting plaintiff's motion to proceed by pseudonym); *Doe v. Swarthmore College*, No. 2:14-cv-00532-SD (E.D. Pa. Jan. 29, 2014), ECF No. 3 (finding the balance in favor of anonymity "compelling").

Accordingly, this factor weighs heavily in favor of non-disclosure.

**IV.     The Plaintiff Would Suffer Immense Injury from the Disclosure of His Identity**

The third factor also weighs in favor of allowing Plaintiff to proceed pseudonymously as the revelation of his identity may result in significant harm to Plaintiff, the exact type of which he seeks to remedy by the commencement of this lawsuit. *See Doe v. Colgate Univ.,* No. 5:15-CV-1069 (LEK/DEP), 2016 WL 1448829, at *3 (N.D.N.Y. Apr. 12, 2016) ("[s]hould Plaintiff prevail in providing that the charges against him were unfounded and the procedures Defendants followed in their investigation were unfair, forcing Plaintiff to reveal his identity would further exacerbate the emotional and reputational injuries he alleges.")

Although the issue at the heart of this case is RFU's failure to follow its own policies and the requirements of Title IX, the subject matter of sexual misconduct and false accusations is a highly volatile issue in the public discourse right now and identifying Plaintiff would unduly place him at risk for physical or mental harm. Plaintiff has already suffered emotionally as a result of Roe's allegations and the flawed investigation and hearing process that followed.

Plaintiff has worked tirelessly to achieve his goal of becoming a physician's assistant. He received a Bachelor's degree in global health and worked as a Community Health Facilitator with the Peace Corps in Peru, working to reduce childhood anemia rates. Compl. ¶2. Plaintiff was a model student, having been awarded the prestigious and selective National Health Service Corps scholarship from the federal government. Compl. ¶3. The scholarship included full tuition and a living stipend for Plaintiff. Compl. ¶3. As part of the scholarship, upon graduation Plaintiff was prepared to work for two years in a low-income health resource shortage area. Compl. ¶3. Accordingly, Plaintiff had a guaranteed job after graduation and an opportunity to be of service in an underprivileged area. Compl. ¶3.

Plaintiff's lifelong dream of becoming a physician's assistant has been destroyed by the sanction. Compl. ¶4. Plaintiff has not been able to complete his degree at RFU or any other medical school or obtain his physician's assistant's license. In that regard, even if Plaintiff were to achieve his objective of removing the sanction from his academic records, potential future employers, educational institutions, and even future romantic partners would all have access to these allegations at their fingertips – all it takes is a Google search.

The likelihood of being hired is almost nil when an applicant must contend with the social stigma associated with being found responsible and dismissed for sexual assault, regardless of whether the decision is ultimately overturned as the result of litigation. As one commentator has

noted, employers "take a huge risk by hiring a former harasser. If I'm advising my client, I'm telling them not to make the hire unless they are convinced the allegations are false. And even in that case they are taking a risk." *See* Jon Hyman, Esq., *Sexual Harassment is the Hiring Scarlet Letter*, Workforce.com (Feb. 8, 2018), available at https://www.workforce.com/2018/02/08/sexual-harassment-hiring-scarlet-letter/ (recounting story of former professor who resigned amid accusations of sexual misconduct, left the country, found new work in China, and was then petitioned by students at new university based on prior, unproven allegations).

Surely this Court can take judicial notice of the prolific rise of the #MeToo movement, which has created a sea change in the nation's views on sexual misconduct, and, more importantly, on the social, professional, and personal implications of being publicly accused of sexual assault. Social media is now regularly weaponized against men accused of misconduct, with online petitions and protests calling for their termination, resignation, and repudiation, oftentimes before the allegations are even tested in any kind of reliable, unbiased proceeding.

According to the New York Times, since the rise of #MeToo, "at least 200 prominent men have lost their jobs after public allegations of sexual harassment." Carlsen et al., *#MeToo Brought Down 200 Powerful Men. Nearly Half of Their Replacements are Women*, N.Y. Times, (Oct. 29, 2018), https://www.nytimes.com/interactive/2018/10/23/us/metoo-replacements.html. Notably, the list of 200 only represents individuals "who permanently lost their jobs or significant roles, professional ties or projects (e.g., concert tours, book deals) within the past year after publicly reported accusations of sexual misconduct," and does not include "cases of those put on temporary or indefinite leave." And, in the vast majority of the listed cases, the repercussions came on the basis of *allegations alone*, which the accused denied. *See also* Brian Stelter and Tom Kludt, *NBC*

*Fires Matt Lauer After Complaint About 'Inappropriate Sexual Behavior'*, CNN (Nov. 29, 2017), https://money.cnn.com/2017/11/29/media/matt-lauer/index.html?iid=EL (Accused male fired without formal finding); *CBS News Fires Charlie Rose After Sexual Misconduct Allegations*, CBS News (Sept. 23, 2018), https://www.cbsnews.com/news/charlie-rose-fired-cbs-news-sexual-misconduct-allegations/ (accused male fired without formal finding).

Likewise, students accused of sexual misconduct have faced intense backlash and harassment when their identities have been revealed, even when their cases were either not yet adjudicated, or they were found not responsible. *See, e.g.*, Mitchell Byars, *Protests at CU set for Monday as Student Charged in Rape*, Boulder Daily Camera (Mar. 14, 2019) https://www.dailycamera.com/2019/03/14/protests-at-cu-set-for-monday-as-student-charged-in-rape/ (University of Colorado students demanding school expel student *accused* of sexual assault; posters with the accused student's photo and the allegations posted on campus); Ariel Kaminer, *Accusers and the Accused, Crossing Paths at Columbia University*, N.Y. Times (Dec. 21, 2014) https://www.nytimes.com/2014/12/22/nyregion/accusers-and-the-accused-crossing-paths-at-columbia.html (student accused of sexual assault *and found not responsible* in university Title IX proceeding was "denounced as a rapist on fliers and in a rally in the university's quadrangle," had his "name . . . plastered on campus bathrooms and published in easily searchable articles," and had his photo posted on the internet by "detractors . . . as warnings to strangers"); Patrick Witt, *A Sexual Harassment Policy that Nearly Ruined My Life*, Boston Globe (Nov. 3, 2014), https://www.bostonglobe.com/opinion/2014/11/03/sexual-harassment-policy-that-nearly-ruinedlife/hY3XrZrOdXjvX2SSvuciPN/story.html (article written by Yale student accused of unspecified acts in an "informal" university proceeding, explaining that revelation of the allegations "cost me my reputation and credibility, the opportunity to become a Rhodes scholar,

the full-time job offer I had worked so hard to attain, and the opportunity to achieve my childhood dream of playing in the NFL. I have had to address it with every prospective employer whom I've contacted, with every girl that I've dated since, and even with Harvard Law School during my admissions interview.")

Similar outcomes have resulted from findings of responsibility. *See* Richard Adams, *Warwick University Says Rape Threat Pair Won't Return*, Guardian (Feb. 4, 2019) https://www.theguardian.com/education/2019/feb/05/warwick-university-says-threat-pair-wont-return (students found responsible for making rape threats successfully appealed initial ten-year suspension, resulting in protests by "[s]enior academics and heads of department," "a number of Warwick alumni contacted the university to express their dismay [and a] student protest meeting [being] planned," and "an online petition rapidly gained thousands of signatures" to ban the students); *see also* Cathy Young, *Exclusive: Brown University Student Speaks Out on What It's Like to Be Accused of Rape*, Daily Beast (June 8, 2014), https://www.thedailybeast.com/exclusive-brownuniversity-student-speaks-out-on-what-its-like-to-be-accused-of-rape (student found responsible for sexual assault in university proceeding and suspended for one year; accuser subsequently publicly identified the student, leading to public protests, national news stories, and televised commentary by a United States senator that the accused student "brutally raped" the complainant and "should be in jail, not with a one-year suspension").

In other words, the harm that Plaintiff faces should he be publicly identified in this matter could not possibly be ameliorated by an eventual adjudication in his favor: the existence and publication of the allegations alone would forever impact his life in concrete, detrimental, life-altering ways that go well beyond any sort of immaterial, low-level "embarrassment." *See Doe v. Alger*, 317 F.R.D. 37, 42 (W.D. Va. 2016) ("The court agrees with Doe that irreparable harm to

his name is a relevant factor here and that it tips in favor of anonymity. If he were not allowed to proceed anonymously, part of the relief he seeks—expungement of his student record—would fall short of making him whole: the cat would have already been let out of the bag."). Indeed, in *Doe v. Rector & Visitors of George Mason Univ.*, 149 F. Supp. 3d 602, 622 (E.D. Va. 2016), not only was the plaintiff—a male university student found responsible for sexual misconduct—permitted to litigate by pseudonym, he ultimately won summary judgment against the university on the specific grounds that the stigma associated with being found responsible for sexual assault, combined with the sanction imposed by the university, constituted a concrete injury:

> [P]laintiff's lost opportunity to continue with his post-secondary education, coupled with the possibility that he may be unable to pursue meaningful educational opportunities elsewhere while his name remains associated with sexual misconduct, inevitably affects plaintiff's professional prospects. . . . And *common sense suffices to understand that an adjudication of responsibility for sexual misconduct carries a much more powerful stigma* than an adjudication of run-of-the-mill assault or vandalism.
>
> *Doe v. Rector & Visitors of George Mason Univ.*, 149 F. Supp. 3d at 622 (emphasis added).

*See also Doe v. Cummins*, 662 Fed. Appx. 437, 445 (6th Cir. 2016) (when plaintiff male university student was found responsible by his university for sexual assault, "the adverse disciplinary decision did, and continues to, impugn his reputation and integrity, thus implicating a protected liberty interest.") The fact that courts have recognized the stigma of a sexual assault adjudication as sufficiently damaging to constitute a legally cognizable harm serves to underscore Plaintiff's fear of disclosure in the instant matter as much more than a mere personal desire to avoid embarrassment.

The United States District Court for the District of New Hampshire has astutely recognized:

[T]hese potential harms are severe and reasonable. . . . [S]ignificant in this case is plaintiff's argument that public disclosure will subject him to reputational damage and will impair his future educational and career prospects, regardless of the actual outcome of this action. Plaintiff cites other campus sexual-assault cases to show that the mere accusation that one has committed a sexual assault can subject the accused to lasting reputational damage and harassment, even where, as here, the accused is ultimately found not culpable of sexual assault. Such a concern is only exacerbated in the Internet age, which can provide additional channels for harassment and will connect plaintiff's name to [the school's]'s findings and sanction forever, whether or not he is successful in this litigation. . . . Plaintiff has a reasonable fear that, *whatever the outcome of the action, public identification will subject him to severe reputational harm and harassment*, and will defeat the very purpose of this litigation.

*Doe v. Trustees of Dartmouth Coll.*, No. 18-CV-040-LM, 2018 WL 2048385, at *5–6 (D.N.H. May 2, 2018) (emphasis added) (citations omitted).

*See also Doe v. Univ. of St. Thomas*, No. 16-CV-1127, 2016 WL 9307609, at *2 (D. Minn. May 25, 2016) ("Even if his lawsuit were successful and his claims of unfair treatment were vindicated down the road—an outcome about which the Court offers no opinion of likelihood—the complained-of damage to Mr. Doe's reputation would be perhaps unfixable if his identity is known. . . . [F]orcing Mr. Doe to proceed under his true name would guarantee a permanent label as a sexual offender, discoverable with a simple Google search; that is arguably worse than the reputational harm he complains of from the University's currently confidential disciplinary proceedings. This factor weighs heavily in favor of pseudonymous proceeding.").

The harm that Plaintiff fears if his name is revealed in this case is concrete, severe, and lasting, and would ultimately render any subsequent victory on the merits hollow, as the very damage he seeks to avoid by this lawsuit would be incurred as a result of the disclosure. In the current social climate, a mere allegation of sexual assault alone is enough to ruin a person's life and career. Plaintiff should not be forced to risk his entire professional future and personal reputation in order to have his case heard on the merits. His interest in privacy by far outweighs the public interest in open proceedings.

Thus, this factor weighs heavily in favor of non-disclosure.

## V.        The Defendants Would Not Be Prejudiced by the Use of a Pseudonym

Further, Plaintiff should be permitted to proceed under a pseudonym as Defendants would not be prejudiced in any way by the use of a pseudonym. *Doe v. Indiana Black Expo, Inc*., 923 F. Supp. at 140. See *Does I thru XXIII v. Advanced Textile Corp.*, 214 F.3d 1058, 1069 (9th Cir. 2000). In the instant case, Defendant is well aware of Plaintiff's identity. *See* Declaration of Andrew T. Miltenberg, Ex. A, ¶13.  As such, Defendant is perfectly able to defend this case, as they may gather relevant evidence (the vast majority, if not all of which, is in Defendant's possession), conduct discovery, and formulate defenses just as they would if Plaintiff were to proceed under his own name. As the Eastern District of New York observed, "[o]ther than the need to make redactions and take measures not to disclose plaintiff's identity, Defendants will not be hampered or inconvenienced merely by Plaintiff's anonymity in court papers." *Doe No. 2 v. Kolko,* 242 F.R.D. 193, 198 (E.D.N.Y. 2006).

Accordingly, Plaintiff must be permitted to proceed anonymously in the present action, as revealing his name will cause significant prejudice to Plaintiff, while proceeding anonymously will not hinder Defendants in any way.

**CONCLUSION**

Based on the foregoing, in consideration of the totality of the circumstances supporting anonymity, the Court should allow Plaintiff to employ a pseudonym in this matter. The interests of Defendant and/or the public will not be harmed if Plaintiff's name is not revealed, whereas Plaintiff, along with the non-party students involved in this matter, would be subject to great risk of harm and prejudice if Plaintiff is forced to disclose his identity at this time. For these reasons

and other such reasons as may appear just to the Court, Plaintiff respectfully requests that his *Ex*

*Parte* Motion to Proceed Under Pseudonym and for Protective Order be granted in its entirety.

Dated: New York, New York
   May 15, 2023

*Attorneys for Plaintiff John Doe*

**NESENOFF & MILTENBERG, LLP**

**By: */s/ Andrew T. Miltenberg***
**Andrew T. Miltenberg, Esq. (*pro hac vice forthcoming*)**
**Tara J. Davis, Esq. (*pro hac vice forthcoming*)**
**Helen Setton, Esq. (*pro hac vice forthcoming*)**
**363 Seventh Avenue, Fifth Floor**
**New York, New York 10001**
**(212) 736-4500**
**amiltenberg@nmllplaw.com**
**tdavis@nmllplaw.com**
**hsetton@nmllplaw.com**

**ELVIS GONZALEZ, LTD.**

**By: */s/ Elvis Gonzalez***
**Elvis Gonzalez, Esq. (Bar No. 6280115)**
**233 South Wacker Drive, Suite 6149**
**Chicago, Illinois 60606**
**(312) 558-9779**
**egonzalez@elvisgonzalezltd.com**