IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| NICHOLAS GASH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | |
| | ) | |
| v. | ) | No. 1:23-cv-02054 |
| | ) | |
| | ) | |
| ROSALIND FRANKLIN UNIVERSITY, | ) | |
| et al., | ) | |
| | ) | |
| Defendant. | ) | |

<u>Memorandum Opinion and Order</u>

Plaintiff Nicholas Gash was expelled from Rosalind Franklin University after the University found him responsible for violating its Title IX Policy prohibiting sex-based misconduct. He asserts that the University's investigation and disciplinary proceedings were infected with unlawful anti-male bias. In this lawsuit, he claims that the University and its Board of Trustees violated Title IX and Illinois' Preventing Sexual Violence in Higher Education Act, 110 ILCS 205/9.21. Gash also claims that the University, the Board of Trustees, and three individuals involved in the University's investigation and disciplinary proceedings are liable to him for breach of contract and negligence.

Two motions to dismiss are pending, one by the individual defendants and another by the University.[1] Both motions proceed under Fed. R. Civ. P. 12(b)(6) and argue that the Amended Complaint fails to state any claim entitling Gash to relief. For the reasons that follow, the motions are granted.

I.

In a recent decision denying Mr. Gash's request to proceed under a pseudonym, I summarized the facts underlying his claims. *See Doe v. Rosalind Franklin Univ.*, No. 1:23-CV-02054, 2023 WL 5338720, at *1–2 (N.D. Ill. Aug. 4, 2023). Gash realleges those facts in his Amended Complaint, which recounts defendants' allegedly unlawful investigation of a complaint made against him by a fellow student ("Jane Roe") and defendants' putative discrimination and misconduct in connection with the disciplinary proceedings that followed. I reproduce below my summary of the background facts and will expand upon them as necessary in the course of my analysis. It bears recalling that

---

[1] The University raises arguments for dismissal on behalf of itself and the Board of Trustees, the latter of which it contends is not a proper defendant. Gash offers no response to the University's argument concerning the Board of Trustees, which I take as a concession that dismissal of the Board is appropriate. *See Midwest Generation EME, LLC v. Continuum Chem. Corp.*, 768 F. Supp. 2d 939, 950 (N.D. Ill. 2010)("failure to respond to an opposing party's argument implies concession") (citing cases).

my factual recitation "is one-sided because the posture of the case requires it to be." *Doe v. Purdue Univ.*, 928 F.3d 652, 656 (7th Cir. 2019).

According to the complaint, in November of 2021, [Gash] played a "drinking game" at an off-campus party at Jane's house, where he consumed several alcoholic drinks. [Gash] then went to a bar with Jane and others, where he consumed more alcohol and became "very intoxicated." He then consumed a marijuana "edible" and blacked out shortly thereafter. [Gash] claims to remember nothing further from that night until he awakened the next morning, fully clothed, on Jane's couch.

Approximately a week later, Jane asked to meet with [Gash], and at their meeting she described a sexual encounter between the two of them on the night of [Gash]'s intoxication. Jane told [Gash] that she had not consented to having sex with him. Having no memory of the encounter due to his intoxication, [Gash] was "shocked" to learn that Jane claimed he had sexually assaulted her.

In March of 2022, Jane filed a formal complaint against [Gash] pursuant to Title IX of the Education Amendments Act of 1972, 20 U.S.C. § 1681 et seq. [Gash] received a Notice of Allegations from the University's Vice President for Diversity, Equity, and Inclusion, which did not include any details of the allegations against him or identify the specific policies he allegedly violated. A second Notice of Allegations informed [Gash] that Jane claimed he had "engaged in unwanted verbal and physical conduct and touching, aggressive pushing, holding down, moving around, and unconsensual (sic) sex with her more than once," and that such behavior "could constitute sexual assault, sexual violence, and/or sexual harassment" under the University's Title IX Policy.

[Gash]'s complaint goes on to allege that following interviews with Jane, [Gash], and six witnesses, the University issued an Investigative Report on May 12, 2021. Four days later, [Gash] initiated the process to

withdraw from the University. After [Gash] was informed that his withdrawal was approved, he emailed defendant Barbato stating that he "did not plan on participating in the Title IX Hearing" because as a former student, the University's policies no longer applied to him. [Gash] thus requested that the proceedings be dropped. But on May 31, [Gash] learned that his withdrawal had not been completed, and that the Title IX hearing would go forward. A Final Investigative Report was issued, and a virtual hearing was held in which [Gash] participated. Following these proceedings, [Gash] was found responsible for violating the University's Title IX policy and expelled from the University. [Gash] appealed the decision but was unsuccessful. ...

[Gash] complains that the University's investigation was shoddy and biased; that the University's decision to proceed after his attempt to withdraw was arbitrary and reflects its "agenda" of improperly exercising Title IX jurisdiction for the purpose of condemning him; and that the proceedings as a whole were conducted in a manner that discriminated against him based on his sex.

*Id*. at *1-*2.

## II.

To survive defendants' motions to dismiss, Gash must allege facts that "raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). This means that he "must plead particularized factual content, not conclusory allegations," from which I may infer that defendants are liable for the alleged misconduct. *Doe v. Columbia Coll. Chicago*, 933 F.3d 849, 854 (7th Cir. 2019). My task at this stage "is not to determine what allegations are supported by the evidence but to determine whether [Gash] is entitled to relief

4

if everything that he says is true." *Doe v. Purdue Univ.*, 928 F.3d 652, 656 (7th Cir. 2019). Accordingly, I assume the truth of his factual allegations, but I disregard any legal conclusions and "threadbare recitals" supported only by "conclusory statements." *Ashcroft v. Iqbal,* 556 U.S. 662, 678-78 (2009).

Title IX provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any educational program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). A Title IX discrimination claim such as the one Gash asserts requires allegations suggesting that: "(1) the educational institution received federal funding, (2) plaintiff was excluded from participation in or denied the benefits of an educational program, and (3) the educational institution in question discriminated against plaintiff based on gender." *Columbia Coll. Chicago*, 933 F.3d at 854. Only the third element is at issue here.

Like other plaintiffs around the country who have pursued Title IX claims arising out of disciplinary proceedings against them based on allegations of sexual misconduct, Gash argues that external pressure from the federal government—embodied in policy documents such as the Department of Education's 2011 "Dear

5

Colleague Letter"[2] and its 2014 "Questions and Answers on Title IX and Sexual Violence" (the "2014 Q&A")[3]—caused universities to take an overzealous approach to investigating and punishing sexual misconduct among students and to implement policies that discriminated against men. *See, e.g., Doe v. Samford Univ.*, 29 F.4th 675, 691 (11th Cir. 2022); *Doe v. Univ. of Denver*, 952 F.3d 1182, 1192 (10th Cir. 2020); *Schwake v. Arizona Bd. of Regents*, 967 F.3d 940 (9th Cir. 2020); *Doe v. Univ. of Scis.*, 961 F.3d 203, 205 (3d Cir. 2020); *Doe v. Columbia Coll. Chicago*, 933 F.3d 849 (7th Cir. 2019); *Doe v. Miami Univ.*, 882 F.3d 579 (6th Cir. 2018); *Doe v. Columbia Univ.*, 831 F.3d 46 (2d Cir. 2016)); *Doe v. Univ. of Chicago*, No. 16 C 08298, 2017 WL 4163960 (N.D. Ill. Sept. 20, 2017). Indeed, the Seventh Circuit has explained that the 2011 Dear Colleague Letter "ushered in a more rigorous approach to sexual misconduct allegations." *Doe v. Purdue Univ.*, 928 F.3d 652, 668 (7th Cir. 2019). Among other things, it "encouraged schools to publish their discrimination policies, adopt and publish grievance procedures, ensure their employees are trained to report and effectively respond to

---

[2] An archived version of the letter is available here: https://www2.ed.gov/print/about/offices/list/ocr/letters/colleague-201104.html.

[3] An archived version of this document is available here: https://www2.ed.gov/about/offices/list/ocr/docs/qa-201404-title-ix.pdf.

incidents of harassment, and appoint a Title IX coordinator." *Columbia Coll. Chicago*, 933 F.3d 849, 855 (7th Cir. 2019).

Gash alleges that while the Dear Colleague Letter directed universities "to take immediate action" to address sexual violence and harassment, it "de-emphasized fair process" for those accused of sexual misconduct by failing to require a presumption of innocence; directing schools to minimize the burden on the complainant; limiting cross-examination; and requiring schools to apply a "preponderance of the evidence" standard in evaluating allegations of sexual misconduct, among other things. Am. Compl. at ¶ 24. Although Gash concedes that both the 2011 Dear Colleague Letter and the 2014 Q&A were rescinded long before the investigation and proceedings at issue here took place and were replaced by interim guidance emphasizing that "[a]ny rights or opportunities that a school makes available to one party during the investigation should be made available to the other party on equal terms," Am. Compl. at ¶ 32, he alleges that "pressure on the University to vindicate female students alleging violations of [the University's Title IX] Policy resulted in the University subjecting [him] to a biased and unfair process, which was tilted in favor of the female complaint and against him as a male respondent," *id*. at ¶ 205.

Many courts, including the Seventh Circuit, "have treated the Dear Colleague letter as relevant in evaluating the plausibility of a Title IX claim." *Purdue Univ.*, 928 F.3d at 668 (7th Cir. 2019); *accord*, *Schwake* 967 F.3d at 948–49; *Doe v. Baum*, 903 F.3d 575, 586 (6th Cir. 2018); *Columbia Univ.*, 831 F.3d at 56–58. "Public pressure is not enough on its own to support a claim of discrimination, however." *Doe v. Univ. of S. Indiana*, 43 F.4th 784, 792 (7th Cir. 2022); *see also Columbia Coll.*, 933 F.3d at 855 (a plaintiff must combine general allegations about public pressure "with facts particular to his case to survive a motion to dismiss."). While "[t]he letter and accompanying pressure gives [the plaintiff] a story about why [the University] might have been motivated to discriminate against males accused of sexual assault," specific facts are required to support an inference that the university's disciplinary decision was in fact motived at least partly by the plaintiff's sex. *Purdue Univ.*, 928 F.3d at 669. In this connection, Gash enumerates the following flaws in the University's Title IX proceedings: 1) the University failed to afford him the presumption of innocence; 2) the University lacked jurisdiction over the incident Roe alleged; 3) defendant Barbato interfered with his withdrawal from the University; 4) the hearing panel "displayed blatant

bias" toward plaintiff during the hearing[4]; 5) the hearing panel curtailed his advisor's cross-examination of witnesses "for the sake of 'efficiency'" but did not do the same to Roe's advisor; 6) the hearing panel made statements supportive of Roe during the hearing; 7) the hearing panel interrupted Gash's advisor's cross-examination to hear Roe's witness's testimony; 8) the hearing panel did not permit Gash to observe the testimony of Roe's witnesses; 9) the investigator and hearing panel ignored flaws and inconsistencies in Roe's testimony; and 10) the "Appeal Decision Maker" summarily dismissed Gash's appeal without considering its merits.[5] Am. Compl. at ¶¶ 204, 144, 147. These alleged flaws do not plausibly suggest gender discrimination.

To begin, "a plaintiff cannot prove gender discrimination by merely identifying mistakes or imperfections in the process." *S. Indiana*, 43 F.4th at 793 (citing *Samford University*, 29 F.4th at 688 (11th Cir. 2022) ("A deviation from a Title IX policy is not, in and of itself, a violation of Title IX."). At least one of the alleged errors—the hearing panel's failure to allow Gash to observe the testimony of Roe's witnesses—applied equally to

---

[4] Plaintiff's allegation of bias is both conclusory and a legal conclusion, so I need not accept its truth.

[5] This allegation, too, is too conclusory to merit a presumption of truth. Moreover, it is odds with plaintiff's allegation elsewhere that defendant Parsley issued an appeal decision "denying every point he made in his appeal." Am. Compl. at ¶ 166.

Roe. *See* Am. Compl., at ¶ 149 ("the hearing panel removed *both parties* from the hearing during the entirety of the witness presentations") (emphasis added). Accordingly, it does not support an inference of sex discrimination. *Univ. of S. Indiana*, 43 F.4th at 796 (a "possible procedural error that applied equally to both Jane and John does not support an inference of anti-male bias against John."). Moreover, all of the putative errors are facially "divorced from gender," *Columbia Coll. Chicago*, 933 F.3d at 856, so they demonstrate, at most "a pro-victim bias" that does not support a claim for sex discrimination because "both women and men can be victims of sexual assault." *Johnson v. Marian Univ*., 829 F. App'x 731, 733 (7th Cir. 2020); *see also Doe v. Loyola Univ.-Chicago*, No. 20 CV 7293, 2021 WL 2550063, at *7 (N.D. Ill. June 22, 2021) ("a pro-victim bias is not sex bias"), appeal dismissed sub nom. *Doe v. Loyola Univ. of Chicago*, No. 21-2360, 2021 WL 6689520 (7th Cir. Aug. 9, 2021).

Indeed, the investigation and proceedings the Amended Complaint describes do not compare to those that courts have held sufficient to raise an inference of sex discrimination. In *Purdue University*, for example, the court observed that because "the Office of Civil Rights—a sub-agency of the Department of Education—had opened two investigations into Purdue during 2016, the pressure on the university to demonstrate compliance was far

from abstract." *Purdue Univ.*, 928 F.3d at 668. Around the same time, a university center dedicated to supporting victims of sexual violence posted an article from The Washington Post titled "Alcohol isn't the cause of campus sexual assault. Men are." *Id.* at 669. Against this backdrop, the court considered the plaintiff's allegations that two of the three hearing panel members "candidly stated that they had not read the investigative report" and took no evidence into account other than the victim's accusations, 928 F.3d at 658, 669; that the defendants failed to give the plaintiff a copy of the investigation report—which falsely stated that he had "confessed" to the accusations—prior to his hearing, *id.* at 657; that the defendants "chose to credit Jane's account without hearing directly from her," *id.* at 669; and that the defendants refused to allow the plaintiff to present any witnesses, including one who would have stated that he was in the room at the time of the alleged assault and that the victim's account of the events was false, *id.* Taken together, the court held that these allegations raised a plausible inference of sex discrimination. *Purdue Univ.*, 928 F.3d at 667-68.

Gash's allegations are nothing like these. Gash admits that by the time defendants investigated Roe's allegations, the policies that he claims caused universities to implement

discriminatory procedures had been rescinded and replaced with guidelines containing specific provisions to ensure fairness to those accused. And indeed, Gash received the investigation report in advance of the hearing and had the opportunity to present witnesses, to cross-examine Roe, and to question witnesses before the hearing panel. The specific conduct Gash attributes to defendants—for example, that the University elected to pursue Roe's complaint even though the events at issue occurred off campus and rejected Gash's effort to terminate the Title IX proceedings after he attempted to withdraw from the University; that defendant Kind-Keppel failed to "ask Roe probing questions to discern the credibility or logic of her account"; that defendant Barbato "commented unfavorably on Plaintiff's decision to refrain from answering any substantive questions during his interview due to his lack of memory of the relevant events"; and that hearing panel "instructed Plaintiff's advisor to be "a little more direct and efficient [in] your questioning, so that we can get through this," Am. Compl. at ¶¶ 167, 94, 127(c), 121, 144—even if erroneous, are no more suggestive of sex discrimination than they are of lawful alternative explanations, including incompetence, impatience, or pro-complainant bias. *See Doe v. Samford Univ.*, 29 F.4th 675, 689, 692 (11th Cir. 2022) (where procedural irregularities are

susceptible to obvious alternative explanations such as "ineptitude, inexperience, and pro-complainant bias...Doe's allegations about a government policy that has been rescinded and replaced do not assist him in crossing the line between possibility and plausibility of entitlement to relief[.]") (internal quotation marks and citation omitted); *accord Univ. of S. Indiana*, 43 F.4th at 793 ("[f]ew trials in civil courts are error-free, but appellate courts do not quickly infer that procedural errors in a trial show the judge was biased.").

Gash's allegations are likewise distinct from those in *Doe v. Columbia Univ.*, 831 F.3d 46 (2d Cir. 2016), where the court reversed dismissal of the plaintiff's Title IX claim because the plaintiff had alleged not only that federal policies encouraged universities in general to take an overzealous approach to investigating and punishing sexual misconduct among students, but also that "during the period preceding the [plaintiff's] disciplinary hearing, there was substantial criticism of the University, both in the student body and in the public media, accusing the University of not taking seriously complaints of female students alleging sexual assault by male students." *Id*. at 57. In addition, the plaintiff alleged that the university's Title IX investigator failed to tell him that he could submit his own written statement to her or to the disciplinary panel;

failed to advise the plaintiff that he could seek the support of a student advocate or the advice and counsel of his Dean of Students; and failed to interview any of the witnesses the plaintiff identified. *See Columbia Univ.*, 831 F.3d at 49-50. None of these things happened to Gash.

In short, the picture Gash paints is of an allegedly slipshod investigation followed by a hearing in which the decisionmakers elected to credit Roe's improbable account of the alleged assault while taking a poor view of plaintiff's inability to offer a contrary account due to his state of intoxication. However unfair plaintiff may perceive the University's approach, the process he describes does not suggest that it discriminated against him based on his sex. *See Doe v. Columbia Coll. Chicago*, 299 F. Supp. 3d 939, 955 (N.D. Ill. 2017), aff'd, 933 F.3d 849 (7th Cir. 2019) (even if aspects of the "truth-seeking process were unfair" to plaintiff, they do not suggest sex discrimination absent allegations that a female student in his position would be treated differently) (citation omitted).

Gash's state claims require far less discussion.[6] With respect to his contracts claim, Gash concedes that this claim

---

[6] I resolve these claims in the discretionary exercise of my supplemental jurisdiction. Although federal courts generally relinquish jurisdiction over state claims when all federal claims are dismissed prior to trial, *Wright v. Assoc. Ins. Cos.*, 29 F.3d 1244, 1251 (7th Cir. 1994), whether to retain or

14

must be dismissed as to the individual defendants because he had no contractual relationship with any of them. Indeed, a breach of contract claim requires Gash to allege: "(1) the existence of a valid and enforceable contractual promise, (2) a breach of that promise, (3) plaintiff performed his contractual obligations, and (4) resultant damages." *Columbia Coll. Chicago*, 933 F.3d at 858. In *Columbia College Chicago*, the Seventh Circuit explained:

> Illinois courts have expressed a reluctance to interfere with academic affairs and have held that a student's breach of contract claim must involve decisions that were arbitrary, capricious, or made in bad faith. [*Raethz v. Aurora Univ.*, 805 N.E.2d 696, 699 (Ill. 2004)]. Columbia would not be liable even if we find it exercised its academic judgment unwisely; rather it must have disciplined a student without any rational basis. *Frederick v. Northwestern Univ. Dental School*, 247 Ill. App. 3d 464, 187 Ill. Dec. 174, 617 N.E.2d 382, 387 (1993).

*Id.* Accordingly, the burden on Gash "is high," as he may avoid dismissal only if his allegations plausibly suggest that

---

relinquish jurisdiction is "committed to the district court's judgment." RWJ Mgmt. Co. v. BP Prods. N. Am., Inc., 672 F.3d 476, 479 (7th Cir. 2012). I make the basis for my jurisdiction clear because although the Amended Complaint asserts diversity as an additional basis for federal jurisdiction, its factual allegations—which identify only the individual defendants' state of residence, not their citizenship—do not identify the defendants' citizenships—do not support my exercise of diversity jurisdiction. *Guar. Nat. Title Co. v. J.E.G. Assocs.*, 101 F.3d 57, 59 (7th Cir. 1996) ("[w]hen the parties allege residence but not citizenship, the court must dismiss the suit.").

the University "did not exercise its academic judgment at all, instead acting arbitrarily or in bad faith," *id*. (quoting *Raethz*, 805 N.E.2d at 700), or that it disciplined him "without any rational basis." *Id*. Whatever the shortcomings in its Title IX proceedings, that is not a reasonable reading of the facts alleged.

As for his negligence claim, Gash offers no meaningful response to defendants' argument that Illinois common law does not recognize the negligence theory he asserts. Gash claims that defendants owed him a "duty to conduct a fair, impartial and complete investigation," and a "duty to conduct a fair adjudication process." Am. Compl. at ¶ 122. But courts in this district and elsewhere have "specifically rejected negligence claims by students claiming they were wrongly disciplined for sexual assault and that the university did not properly apply its policies." *Columbia Coll. Chicago*, 299 F. Supp. 3d at 963 (N.D. Ill. 2017) (citing cases). Gash does not engage with this case law, cite any authority to the contrary, or otherwise articulate a basis for departing from these decisions.

This leaves only Gash's claim under the Illinois Preventing Sexual Violence in Higher Education Act (the "Act"), 110 ILCS 155/1 et seq., which "does not have an explicit private right of action." *O'Shea v. Augustana Coll.*, 593 F. Supp. 3d 838, 852

(C.D. Ill. 2022). As the court observed in *O'Shea*, "where no court has previously determined whether a private right of action exists under a state statute, many federal courts, including this Court, have decided that analyzing the purpose and intent behind a state statute to determine whether to imply a private right of action seems best addressed by a state court on first impression." *Id*. at 853 (citing cases) (alterations, internal quotation marks, and citations omitted). Gash concedes that this claim should be dismissed without prejudice on this reasoning. See Opp., ECF 35 at n.9.

III.

For the foregoing reasons, defendants' motions to dismiss are granted.

**ENTER ORDER:**

**Elaine E. Bucklo**
United States District Judge

Dated: September 11, 2023

17